IN THE UNITED STATES DISTRICT COURT FOR THE
WESTERN DISTRICT OF MISSOURI
WESTERN DIVISION

| | |
|---|---|
| CHARLES E. TOWNSEND, ) | |
| ) | |
| Petitioner, ) | |
| ) | |
| vs. ) | Case No. 05-0876-CV-W-ODS |
| ) | |
| UNITED STATES OF AMERICA, ) | |
| ) | |
| Respondent. ) | |

ORDER AND OPINION DENYING DEFENDANT'S MOTION FOR POSTCONVICTION
RELIEF PURSUANT TO 28 U.S.C. § 2255,

Pending is Petitioner's Motion for Postconviction Relief Pursuant to 28 U.S.C. § 2255. For the following reasons, the Motion is denied.

I. BACKGROUND

On April 23, 1991, at the age of 21, Petitioner was convicted of stealing over $150 from a St. Louis Bread Company. Petitioner's probation was revoked for failure to pay restitution, failure to refrain from drug and alcohol use, failure to report to his probation officer and for his arrest and subsequent conviction for burglary. In August 1991, Petitioner was convicted of Second Degree Burglary after entering a pest control store and stealing a telephone and several other items. Petitioner's probation was revoked for failure to pay restitution. During his incarceration with the Missouri Department of Corrections, Petitioner incurred violations for fighting, creating a disturbance, disobeying orders, and inciting a riot. In 1993, Petitioner was convicted of First Degree Burglary after he unlawfully entered a female's home and stole a portable radio.

On December 22, 2003, the Kansas City Police Department responded to a report of an armed robbery at Bank of America located at 1200 Main Street. Upon arrival, bank teller Debra Scharper reported Petitioner had approached her teller window and stated, "I need $1,500." He then placed a piece of crumbled paper on the counter, leaned over and said "I'm not fooling, give me the money now. Come on."

Petitioner then lifted his shirt to imply he had a weapon. However, Scharper did not see a weapon. Schraper reported she said, "No problem" and began to remove money from the drawer. Petitioner then said, "Give me those $20's, too." After removing the money, Scharper picked up "bait money," which included an electronic tracking device. She also included $150 worth of two dollar bills. Petitioner took the money and the crumbled piece of paper and fled the scene. Scharper then activated the "hold-up alarm."

Shortly after the robbery, officers conducted a traffic stop of a metro bus. The driver reported Petitioner entered the bus and attempted to put money in the fare slot. Petitioner then opened his hand to show the driver a twenty dollar bill and a five dollar bill and asked the driver for change. The driver told Petitioner "not to worry about it" and asked where he was going. Petitioner asked where the bus was going, and responded "okay" and sat down when the driver stated "Independence and Walnut." The officers conducted a search of the bus and found a two dollar bill under the area where Petitioner had been seated.

On January 7, 2004, officers conducted an interview with Michael King, owner of Manhattan Cleaners and Hat Works in Kansas City. King employed Petitioner on a work crew starting on or about November 14, 2003. King informed officers he loaned Petitioner $3 to go downtown on December 22, 2003. Later that same day, Petitioner returned to Manhattan Cleaners and handed out various amounts of two dollar bills to store employees. He also asked if he could exchange the remaining two dollar bills for other denominations. A security videotape from that date shows Petitioner in the store pulling "wads" of cash from his pockets and then handing them to store employees.

Petitioner was arrested on January 8, 2004 and he admitted to robbing the Bank of America on December 22, 2003. He stated he prepared a demand note which indicated he needed $1,500 and said "I'm not playing." Petitioner said he arrived at the bank and waited 20 minutes before entering. Upon entering the bank, he approached a teller, told her he needed 15 one-hundred dollar bills and then handed her the demand note. Petitioner stated he used the money to visit his family in St. Louis, Missouri.

Defendant pled guilty on October 13, 2004. At the time of his guilty plea, Petitioner issued a statement through his attorney that stated on the day of the robbery

2

he had been drinking. He sat at a bus stop contemplating the robbery and wrote his demand note, wanting to be forceful enough for the teller to give him the money, but he did not want her to think he would actually hurt her. Petitioner filed this Motion for Reconsideration on September 15, 2005.

## II. DISCUSSION

A. Ineffective Assistance of Counsel

Petitioner asserts four separate ineffective assistance of counsel claims. Petitioner first argues his counsel failed to file a Notice of Appeal when requested to do so. Next, Petitioner argues his counsel failed to retain an independent psychiatrist and other experts for his defense. Petitioner then argues his attorney violated his Fifth and Sixth Amendment rights. Finally, Petitioner argues his counsel failed to investigate "mental illness and Graves Disease." Petitioner claims his counsel relied only on the Government's version of the facts and failed to file any motions.

The Court analyzes these claims under the standard set forth in Strickland v. Washington, 466 U.S. 668 (1984). "This standard requires [Movant] to show that his 'trial counsel's performance was so deficient as to fall below an objective standard of reasonable competence, and that the deficient performance prejudiced his defense.'" Nave v. Delo, 62 F.3d 1024, 1035 (8th Cir. 1995), cert. denied, 517 U.S. 1214 (1996) (quoting Lawrence v. Armontrout, 961 F.2d 113, 115 (8th Cir. 1992)). This analysis contains two components: a performance prong and a prejudice prong.

> Under the performance prong, the court must apply an objective standard and determine whether, in light of all the circumstances, the identified acts or omissions were outside the wide range of professionally competent assistance, while at the same time refraining from engaging in hindsight or second-guessing of trial counsel's strategic decisions. Assuming the performance was deficient, the prejudice prong requires proof that there is a reasonable probability that, but for a counsel's unprofessional errors, the result of the proceeding would have been different.

Id. (internal citations omitted). Failure to satisfy both prongs is fatal to the claim. See

3

Pryor v. Norris, 103 F.3d 710, 713 (8th Cir. 1997) (no need to "reach the performance prong if we determine that the defendant suffered no prejudice from the alleged ineffectiveness").

1. Appeal

Petitioner first claims that he was denied effective assistance of counsel because his attorney failed to appeal his sentence. When an attorney fails to follow an instruction to file a Notice of Appeal, prejudice is presumed. Holloway v. United States, 960 F.2d 1348, 1356-57 (8th Cir. 1992). However, there is no indication that Petitioner ever requested his attorney file a Notice of Appeal. Further, Petitioner's attorney informed his client of the likely outcome of an appeal, his intention of filing an Anders brief, and requested Petitioner confirm his desire to file a Notice of Appeal. Petitioner never responded. The Court finds that Petitioner never unequivocally requested an appeal of his sentence. Counsel's failure to file an appeal constitutes ineffective assistance of counsel *only* if a request to file one was made.

2. Psychiatric Examination

Petitioner then claims he was denied effective assistance of counsel because his attorney failed to retain a psychiatric examination and expert advise for defense purposes. However, counsel for Petitioner filed a "Motion for Determination of Competency" for possible insanity defense purposes. Doc. #20 Criminal Case No. 04-0014. Pursuant to that motion, Petitioner was transferred to the United States Medical Center for Federal Prisoners in Butner, North Carolina for psychiatric evaluations. Dr. Tanya L. Cunic evaluated Petitioner and diagnosed Petitioner with Mood Disorder due to Graves' Disease, which does not rise to the level of an insanity defense. Petitioner's counsel did not have a basis to pursue an insanity defense.

3. Constitutional Rights

Petitioner also alleges his counsel violated his Fifth and Sixth Amendment

4

Rights. However, the argument in Petitioner's motion in its entirety is "Counsel failed to?". Petitioner fails to articulate a basis for this allegation, and therefore his claim is denied.

4. Mental Illness and Graves' Disease

Petitioner further alleges counsel provided ineffective assistance of counsel because he failed to investigate mental illness and Petitioner's Graves' Disease. However, as discussed above, counsel moved for, and was granted, psychiatric examinations for Petitioner. At Petitioner's change of plea hearing in front of this Court, Petitioner stated he had never been diagnosed with any form of mental disease or defect of any kind. Further, at that hearing Petitioner clearly stated he was satisfied with his counsel's representation.

## III. CONCLUSION

For the foregoing reasons, Movant's Motion to Vacate, Set Aside or Correct Sentence pursuant to 28 U.S.C. § 2255 is DENIED.
IT IS SO ORDERED.

DATE: April 5, 2006

/s/  Ortrie D. Smith
ORTRIE D. SMITH, JUDGE
UNITED STATES DISTRICT COURT

5